Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 04 C 2393 | DATE | 6/18/2004 |
| CASE TITLE | Comdisco Ventures, Inc. vs. Federal Insurance Company, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, motions [#1] to withdraw the reference to the bankruptcy court are granted. Status hearing is set on 6/24/04 at 9:30 a.m. for scheduling conference.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 6 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUN 2 2 2004 date docketed | 3 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | 6/18/2004 | |
| | Copy to judge/magistrate judge. | 2004 JUN 21 PM 5:25 | date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

DOCKETED
JUN 2 2 2004

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: )<br>)<br>COMDISCO VENTURES, INC., )<br>et al., )<br>)<br>        Debtors. )<br>――――――――――――― )<br>)<br>COMDISCO VENTURES, INC. )<br>)<br>        Plaintiff, )<br>)<br>v. )<br>)<br>FEDERAL INSURANCE COMPANY, )<br>VIGILANT INSURANCE COMPANY, )<br>ABD INSURANCE AND FINANCIAL )<br>SERVICES, HAMPSON MOWRER )<br>KREITZ AGENCY, INC., SUMMIT )<br>PARTNERS OF TEXAS, INC., CRIST )<br>ELLIOT MACHETTE INSURANCE )<br>SERVICES, and ACCORDIA OF )<br>CALIFORNIA INSURANCE SERVICES, )<br>INC., )<br>)<br>        Defendants. ) | No. 04 C 2007<br>No. 04 C 2393<br>Judge Joan H. Lefkow<br><br>Bankruptcy No. 01-24795<br>Adv. No. 04A00285 |

<u>MEMORANDUM OPINION AND ORDER</u>

Defendants Federal Insurance Company ("Federal") and Vigilant Insurance Company ("Vigilant"), joined by defendant Summit Global Partners of Texas, Inc. ("Summit") and ABD Insurance and Financial Services ("ABD"), have filed a Motion to Withdraw the Reference of this proceeding to the United States Bankruptcy Court for the Northern District of Illinois. Defendant Accordia of California Insurance Services, Inc. ("Accordia"), joined by ABD, has

3

filed a separate motion seeking withdrawal of the reference. The debtor opposes the motion. For the reasons stated below, the motions are granted.

## BACKGROUND

On July 16, 2001, Comdisco, Inc. ("Comdisco") filed a Voluntary Bankruptcy petition in the United States Bankruptcy Court of the Northern District of Illinois (the "Bankruptcy Court") for reorganization relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* On July 30, 2002, the Bankruptcy Court entered an order confirming the First Amended and Joint Plan of Reorganization of Comdisco, Inc. and its Affiliate Debtors in Possession dated June 13, 2002. The Reorganization Plan became effective on August 12, 2002. Comdisco continues to operate its business and manage its properties as a reorganized debtor pursuant to 11 U.S.C. §§ 1107(a) and 1108 of the Bankruptcy Code. Plaintiff, Comdisco Ventures, Inc. ("CVI") is a wholly owned subsidiary of Comdisco formed pursuant to the Reorganization Plan. CVI holds all of the assets constituting the former Venture Finance Division of Comdisco. For purposes of the pending motion, the parties treat CVI as synonymous with the debtor, Comdisco, and the court does as well.

At all relevant times, CVI was in the business of leasing computer equipment, office furniture, and other office equipment to various venture capital backed "dot.com" companies. According to CVI, the dot.com companies were responsible for obtaining insurance for such equipment and adding CVI as an additional insured and loss payee under the policies. CVI claims that the dot.com companies instructed and authorized their insurance brokers, including but not limited to defendants Accordia, ABD, Summit, Hampson Mowrer Kreitz Agency, Inc., and Crist Elliqt Machette Insurance Services (collectively referred to as the "Broker

2

Defendants"), to procure the required insurance policies and to have CVI named as an additional insured and loss payee under the policies. CVI claims that the necessary policies were obtained from Federal and Vigilant. Subsequently, the dot.com companies went out of business and the leased equipment disappeared. CVI alleges that it notified Federal and Vigilant of the losses and that Federal and Vigilant have denied coverage on the grounds that CVI is not named as an additional insured or loss payee under the policies.

On or about February 18, 2004, CVI filed an Adversary Proceeding against defendants in the Bankruptcy Court. In its Complaint, CVI alleges that the Broker Defendants issued Certificates of Insurance or Evidence of Insurance to CVI, representing to CVI that it had been added as an additional insured and/or loss payee under policies issued by Federal and Vigilant. CVI alleges that it sustained $12,117,100.53 in equipment-related losses during the effective dates of those policies. CVI seeks recovery against the Broker Defendants for professional negligence, negligent misrepresentation, and intentional misrepresentation. In the alternative, CVI seeks recovery against Federal and Vigilant for breach of contract and breach of the covenant of good faith and fair dealing.

Accordia and ABD have demanded a jury trial and have refused to consent to the Bankruptcy Court's hearing the case.

## DISCUSSION

Federal district courts may--and this court does, by Internal Operating Procedure 15(a)-- refer cases and proceedings involving or relating to bankruptcy matters to bankruptcy judges. 28 U.S.C. § 157(a). Nevertheless, the district court may withdraw any such reference "for cause

3

shown." *Id.*[1] Courts consider the following factors to determine if cause exists: judicial economy, promotion of uniformity and efficiency in bankruptcy administration, reduction of forum shopping, delay and costs to the parties, the particular court's familiarity with the case, and whether the adversary proceeding is "core" or "non-core." *Coe-Truman Technologies, Inc.* v. *U.S. Government*, 214 B.R. 183 (N.D. Ill. 1997). Because the bankruptcy judges have specialized expertise in bankruptcy law, references of core proceedings are seldom withdrawn in this district. Indeed, the "most important" factor is "whether the adversary proceeding sought to be withdrawn is core or non-core." *Id.* at 187.

"[A] proceeding is core . . . if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Id.* (quoting *Diamond Mortgage Corp. of Illinois* v. *Sugar*, 913 F.2d 1233, 1239 (7th Cir. 1990), *cert. denied*, 498 U.S. 1089 (1991)); *see also* 28 U.S.C. § 157(b)(2)(listing matters considered core). In slightly different terms, the Seventh Circuit has stated,

> Core proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law, normally state law.

*In re U.S. Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997). By contrast, a proceeding is non-core if it "does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of bankruptcy," *Barnett* v. *Stern*, 909 F.2d 973, 981 (7th Cir. 1990), such as where the debtor has a cause of action against a third party that can be determined without

---

[1] Withdrawal is mandatory when the resolution of the proceeding "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). All of the claims alleged in CVI's complaint (professional negligence, negligent and intentional misrepresentation, breach of contract, breach of the covenant of good faith and fair dealing) arise under state common law, not the laws of the United States described at § 157(c). Thus, withdrawal is not mandatory.

4

respect to bankruptcy law. Although such a proceeding "may be related to bankruptcy because of its potential effect, ... it is [nonetheless] an 'otherwise related' or non-core proceeding." *Id.*[2]

CVI argues that the court should not withdraw the reference because "the present adversary proceeding is a core proceeding ... because it invokes substantive rights provided by title 11, namely the right to collect upon an asset of the estate." (CVI's Memo. in Resp., at 7.), *citing U.S. Brass*, 110 F.3d at 1268 (citing *In re Shondel*, 950 F.2d 1301, 1305 (7th Cir. 1991); *The Home Insurance Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746 (7th Cir. 1989); *In re Vitek, Inc.*, 51 F.3d 530, 534 (5th Cir. 1995)). This reads "core proceeding" too broadly. True, a bankruptcy judge may determine that an asset (such as an insurance policy) is property of the estate as a necessary threshold to an order to turn over property of the estate, a core matter under § 157(b)(2)(E), or to an order requiring liquidation of an asset of the estate, a core matter under § 157(b)(O). But a claim against a party who is a stranger to the bankruptcy case (*e.g.*, has not filed a claim), alleging the fact or scope of coverage that depends on interpretation of state law, is not a core proceeding, because either the fact or scope of coverage falls squarely within the definition of non-core proceeding: it asserts a right that could exist outside of bankruptcy; it is a cause of action against a third party that can be determined without respect to bankruptcy law.

This is obvious with regard to CVI's claims against the Broker Defendants for professional negligence, negligent misrepresentation, and intentional misrepresentation. Even if

---

[2]The determination of whether a matter is core or non-core can be made either by the bankruptcy court or the district court. 28 U.S.C. § 157(b)(3) expressly permits the bankruptcy judge to determine the issue if it is presented to the bankruptcy court by motion. However, no such motion has been brought in this case. Moreover, the statutory provision allowing a bankruptcy judge to decide the issue in the event that a motion is presented to the bankruptcy court in no way diminishes the authority of the district court to determine the issue in the first instance in the context of a motion to withdraw the reference. *See In re CIS Corp.*, 172 B.R. 748, 755 (S.D.N.Y. 1994)("nothing in [§ 157] or any other statute vests power [to make the core/non-core determination] exclusively in the bankruptcy court."). Thus, this court may make the determination of whether this proceeding is core or non-core.

we start with the premise that an insurance policy is an asset (property) of the estate, CVI's claims against the Broker Defendants are premised on the allegation that CVI was *not* an additional insured and loss payee under the insurance policies at issue. If CVI was not an additional insured or loss payee under the policies, then those policies were not assets of the estate. Thus, CVI's claims against the Broker Defendants are purely creations of state tort law and could be pursued in an ordinary tort suit. In other words, they are non-core.

CVI's claims against Federal and Vigilant are also non-core, despite the *dicta* on which CVI relies. Asserting that the ownership of the insurance policies, not their scope, is the issue before the court, CVI relies on *Home Insurance Co.*, 889 F.2d at 746, a case that involved a malpractice insurance policy issued to a law firm on the basis of false statements made by a lawyer in the firm. The insurer commenced an adversary proceeding in the law firm's bankruptcy case, seeking a declaration that the malpractice insurance policy was void because it was obtained by fraud, naming as defendants the attorneys in the firm and other non-debtors. *Id.* at 748. The Seventh Circuit stated, "A policy of insurance is an asset of the estate, and a request to determine its validity with respect to the debtor is a 'core proceeding' over which a bankruptcy judge has jurisdiction." *Id.* at 748; *see also* 27 U.S.C. § 157(b)(2)(A) and (O) (defining core proceedings to include "proceedings affecting the liquidation of the assets of the estate"). In *U.S. Brass*, the Seventh Circuit did not pause to examine *Home Insurance* and seems to permit the inference that when the issue is the ownership of an insurance policy, rather than its scope, the proceeding is core. 110 F.3d at 1268.

As defendants point out, however, the statement from *Home Insurance* is *dicta*, as is the approving language in *U.S. Brass*. The claims in *Home Insurance* were non-core,[3] and the issue on appeal was whether the adversary proceeding was "related to" the bankruptcy case, making it proper for the bankruptcy judge to hear the case, albeit he had authority only to submit proposed findings of fact and conclusions of law to the district court. 889 F.2d at 749. Had it been a core proceeding, by definition, the bankruptcy judge could have entered a final determination. *See* 28 U.S.C. § 157(b)(1) ("Bankruptcy judges may hear and determine all . . . core proceedings arising under title 11 . . . ."). Had it been non-core but "unrelated," it would not have stayed in either district or bankruptcy court because the district court's original jurisdiction extends only to "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). In other words, the issue on appeal in *Home Insurance* involved not the borderline between "core" and "non-core" proceedings but the borderline between "related" and "unrelated proceedings." (Judge Barliant discusses this point thoroughly in *U.S. Brass Corp. v. California Union Ins. Co.* 198 B.R. 940, 946 (N.D.Ill.1996), stating, "Even if the statement in *Home Insurance* were a viable rule, it would have to be limited to the specific facts of that case in light of later cases.")

In the *U.S. Brass* appeal, the issue was whether the bankruptcy court properly abstained from deciding two diversity cases concerning the debtors' claim to insurance coverage. It was undisputed that the cases were "related" to the bankruptcy. The debtor apparently argued, based on *Home Insurance*, that the policies were property of the estate and thus abstention should not

---

[3]"Home Insurance wanted to resolve more than its entitlements*vis-a-vis* Cooper & Cooper. It named as parties the firm's 12 associates and the plaintiffs in two tort suits pending in state court. The only apparent basis of subject-matter jurisdiction is 28 U.S.C. § 157(c)." 889 F.2d at 748.

7

apply under § 1334(d).[4] This is the same as arguing that determination of the debtor's rights under the policies was a core matter. Conceding that the policies were the debtor's property (which in a chapter 11 means they are property of the estate), the Seventh Circuit pointed out that "no one is trying to take away [the debtor's] property." 110 F.3d at 1268. It soundly rejected the debtor's argument, ruling that § 1334(d) "has no application to a dispute between the debtor and its insurers over the scope of coverage." 110 F.3d at 1261. In other words, the dispute did not present a core issue, the diversity cases were non-core related proceedings; and, furthermore, the bankruptcy judge did not abuse his discretion by abstaining.

Having said all this, the court agrees with defendants that "the right to collect upon an asset of the estate" is not a substantive right granted by Title 11. If it were, then any claim a debtor pursues would properly be an asset of the estate because pursuit of the claim, if successful, might benefit the estate. *See In re CIS Corp.*, 172 B.R. 748, 757 (S.D.N.Y. 1994), in which the court held, "A debtor cannot reclassify what is essentially a non-core state law cause of action by declaring that it affects either 'the liquidation of assets of the estate' or 'the administration of the estate.'"

Of course, even if this is a core proceeding, as stated above the court has authority–although it likely would not exercise it–to withdraw the reference under § 157(d) for cause shown. Here, judicial economy provides sufficient cause to withdraw the reference. As explained above, CVI's claims against the Broker Defendants are certainly non-core. Two of the broker defendants, Accordia and ABD, have demanded a jury trial and do not consent to

---

[4]"This section [permitting or requiring abstention] shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy."

proceeding before the bankruptcy court. Thus, cause to withdraw the reference as to these defendants "automatically exists." *See* § 157(e) (jury trials in the bankruptcy court must be by consent of all the parties."). Because the claims and defenses of CVI with respect to Accordia and ABD are closely intertwined with its claims and defenses as to the other parties to the proceeding, it makes little sense to separate the proceedings. Furthermore, it is likely that it will cost all the parties less to litigate the claims in one forum rather than two.

## CONCLUSION

For the reasons stated above, the motions to withdraw the reference to the bankruptcy court are granted [Case No. 04 C 2007, #1; Case No. 04 C 2393, #1].

ENTER: *Joan H. Lefkow*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: June 18, 2004